UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

PIERRE Q. PULLINS,               )
                                 )
        Plaintiff,               )
                                 )
        v.                       )      Case No. 1:20-cv-01311-JRS-MJD
                                 )
MYLA ELDRIDGE, et al.            )
                                 )
        Defendants.              )

**Brief in Support of the Municipal Defendants' Motion to Dismiss**

In the past couple of months, election fraud has become a hot topic as judges across the country have been inundated with motions to dismiss lawsuits concerning election fraud. When judges rule on motions to dismiss, they must "accept as true the pleaded factual matter and draw all reasonable inferences in favor of the plaintiff." *Democratic Party of Wisconsin v. Vos*, 966 F.3d 581, 585 (7th Cir. 2020). Despite this clear mandate, movants have buried courts with briefs that improperly argue that there is "no proof" supporting an opponent's allegations. *See Trump v. Wisconsin Elections Comm'n*, 2020 WL 7318940, at *8 (E.D. Wis. Dec. 12, 2020), aff'd, 2020 WL 7654295 (7th Cir. Dec. 24, 2020). However, these arguments put the cart before the horse because courts cannot consider challenges to the veracity of an allegation at the pleadings stage. *Id*. This is not a brief that challenges the veracity of Plaintiff's allegations. Instead, it challenges the legal sufficiency of Plaintiff's claims and asks the Court to dismiss them as a matter of law.

Pierre Pullins is an Indiana resident who brought an election fraud claim against Clerk Myla Eldridge, the Marion County Election Board, the City of Indianapolis, and Marion County on May 5, 2020. [Filing No. 1.] He then allowed 153 days to elapse before moving for leave to file an amended complaint. [Filing No. 11.] His amended complaint reasserted his original

election fraud claim. [Filing No. 14.] I then asserted new conspiracy, libel, political persecution, intimidation, and emotional distress claims and identified three federal statutes as the basis of the Court's alleged federal question jurisdiction. *Id*. The Court granted Pullins leave to amend his complaint and reminded him of his obligation to serve his amended complaint. [Filing No. 13.] He then served his amended complaint on the Municipal Defendants on November 5, 2020—184 days after filing his initial complaint and 2 days after the general election. [Filing No. 16 at 2.]

Plaintiff's amended complaint states that Pullins believes that the Clerk "falsified the election result totals for Plaintiff in [numerous] primary election[s] for federal office . . . to humiliate and marginalize him . . . ." [Filing No. 14 at 1–2.] It also states that he believes that the Clerk and three news organizations conspired with "the Andre Carson for Congress campaign to suppress [his] voice and vote totals." *Id*. at 3. It then alleges that Pullins believes that these news organizations "conspired to keep Pullins of[f] their platforms to shield Rep. Carson from negative press . . . ." *Id*. at 4. Next, it argues that the Clerk "brought this conspiracy home by falsifying his vote totals . . . ." *Id*. Plaintiff's amended complaint also claims that an unidentified City employee threatened Pullins. *Id*. It then claims that Pullins does not believe the Indianapolis Metropolitan Police Department ("IMPD") investigated a report that he filed concerning this threat. *Id*. Finally, it states that Pullins has been humiliated and he seeks damages stemming from lost friendships, lost professional development, emotional distress, and depression. *Id*. at 6.

## I.    Argument

### A.    Most of Pullins's claims are barred by the statute of limitations.

Pullins had two years after his claims accrued to bring them against the Municipal Defendants. *See Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012); Ind. Code § 34–11–2–4. An action for an injury to a person or character must be brought within two years after the

cause of action accrues under Indiana law. I.C. § 34–11–2–4(a).  This statute of limitations also applies to Pullins's federal claims. *See Richards*, 696 F.3d at 637.

"[A] district court [may] take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Capital Corp. v. Lease Resolution Corp*., 128 F.3d 1074, 1080 (7th Cir. 1997). Thus, the Court may take judicial notice of facts concerning the primary elections referenced in Plaintiff's initial complaint. The vote totals for the 2018 primary election were reported within 24 hours. Thus, Pullins knew—or should have known—that his election fraud claims accrued by May 9, 2018. (available at https://www.nytimes.com/interactive/2018/05/08/us/elections/results-indiana-primary-elections.html) (published on May 9, 2018 and last accessed on December 28, 2020).

Since Pullins filed his initial complaint on May 5, 2020, any claim that accrued more than two years before May 5, 2020 is untimely. *See id*. Plaintiff's initial complaint concerned election fraud that allegedly occurred between 2006 and May 8, 2018. [Filing No. 1 at 1.] Specifically, it alleged that the Clerk falsified his election result totals from 2006 thru to May 8, 2018. *Id*. But any claim for election fraud that arose between 2006 and May 4, 2018 is untimely and barred.

Plaintiff's initial complaint does not reference any conspiracy involving the Clerk, the media, and the Andre Carson for Congress campaign. It also does not reference any threats that a City employee allegedly made during any election. And it does not reference IMPD's alleged failure to investigate this threat. Thus, the threat, the conspiracy, and the failure to investigate is not "the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading[.]" *See* Fed. R. Civ. P. 15(c)(1)(B).

Since the Plaintiff's complaint establishes that his claims for conspiracy, libel, political persecution, intimidation, and emotional distress must have arose prior to the 2018 primary

election, Pullins knew—or should have known—about those claims on or before May 9, 2018. He had two years from the date that he knew about those claims to bring them against the Municipal Defendants under the applicable statute of limitations. However, he failed to do so. Thus, these claims are untimely and barred under the statute of limitations.

Also, these untimely claims do not relate back to the filing of Plaintiff's initial complaint under Federal Rule of Civil Procedure 15(c) because they did not arise out of the conduct, transaction, or occurrence set out—or attempted to be set out—in his original pleading. *See* Fed. R. Civ. P. 15(c)(1)(B). Indeed, Plaintiff's initial complaint only references conduct that occurred after numerous primary elections—specifically, the Clerk allegedly falsified his election result totals. [Filing No. 1 at 1.] His allegations concerning things that happened before the election— e.g., that an unidentified City employee threatened him, IMPD failed to investigate this threat, and the media conspired with the Municipal Defendants and Congressman Carson's campaign to harm him—were not included in the initial complaint. Since Pullins did not reference this alleged conduct in his initial complaint, his claims arising from that alleged conduct do not relate back. Thus, his untimely conspiracy, libel, political persecution, intimidation, and emotional distress claims should be dismissed.

The only timely claim asserted in Plaintiff's complaint is his claim that the Municipal Defendants allegedly "falsified the election result totals for Plaintiff in [the May 8, 2018] primary election . . . ." [Filing No. 14 at 1–2.] Pullins may argue that his "election fraud" claim concerning this conduct relates back under the federal rules—this is his burden, not the Municipal Defendants. If he establishes that his "election fraud" claim relates back, this claim is the only claim that is not untimely and barred. Thus, this is the only claim that should not be dismissed because it is barred under the applicable statute of limitations.

**B.      Pullins's federal claims are not claims upon which relief may be granted.**

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). To survive a Rule 12(b)(6) motion to dismiss, Pullins's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court should accept as true all well-pleaded facts and draw all reasonable inferences in his favor. *Tucker v. City of Chicago*, 907 F.3d 487, 491 (7th Cir. 2018) (quotations and citations omitted). It should also "determine whether the factual allegations plausibly suggest an entitlement to relief to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012) (quotations and citations omitted). "[I]f they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc*., 496 F.3d 773, 776 (7th Cir. 2007). Pullins's complaint should be dismissed under Rule 12(b)(6) because it is legally deficient under binding law.

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375, 377 (1994). "They possess only that power authorized by Constitution and statute[.]" *Id*. "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Id*. (internal citation omitted). "Like substantive federal law itself, private rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001) (citing *Touche Ross & Co. v. Redington*, 442 U.S. 560, 578 (1979) (remedies available are those "that Congress enacted into law")). "The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy." *Id*. "Statutory intent on this latter point is determinative." *Id*. "Without it, a cause of

action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Id*. at 286–87. "Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." *Id*. (citation and quotation omitted).

Here, Plaintiff's amended complaint alleges that this Court has federal question jurisdiction over this action under 52 U.S.C. § 10101, 42 U.S.C. § 1985, and 18 U.S.C. § 1519. [Filing No. 14 at 2.] However, the Court does not have jurisdiction to grant Pullins the monetary relief he seeks in this case under 52 U.S.C. § 10101—a.k.a. the Voting Rights Act. Although that statute does not exclude a private right of action for injunctive relief—*Allen v. State Bd. of Elections*, 393 U.S. 544, 555-56 & n.18 (1969)—it does not create private right of action for monetary relief. *Olagues v. Russoniello*, 770 F.2d 791, 805 (9th Cir. 1985) (noting that "[n]o case has been cited nor have we found one in which damages were recovered."). According to the Ninth Circuit, "[e]quitable relief suffices to fulfill the purpose of the statute, which is to ensure the right to register and vote at the polls." *Id*. It does not imply an action for damages. *Id*.

Also, the Voting Rights Act "protects an individual's right to vote[.]" *Schwier v. Cox*, 340 F.3d 1284, 1296 (11th Cir. 2003). It does not create a private right of action that allow candidates to sue the Clerk if they believe that she did not accurately report the results of an election. Since Pullins has not alleged that he was denied the right to register or vote, he has not alleged facts that demonstrate that he is entitled to relief under the Voting Rights Act.

Additionally, Pullins is not entitled to the relief he seeks under 42 U.S.C. § 1985. To proceed on a § 1985 claim, "the plaintiff must allege and prove four elements: (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act

in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *United Bhd. of Carpenters & Joiners of Am., Local 610, AFL-CIO v. Scott*, 463 U.S. 825, 828–29 (1983).

"A civil conspiracy is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means.'" *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (quoting *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir. 1988)). Here, Pullins alleges that the Indianapolis Star, the Indianapolis Recorder, and Urban One's WTLC prevented him from criticizing Congressman Carson as much as he would have liked during his primary campaign. [Filing No. 14 at 3–4.] Then, he alleges that "Myla Eldridge brought this conspiracy home by falsifying his vote totals (approximately 250 votes) and two other candidates vote totals." *Id*. at 4. It is difficult to understand why Pullins believes that the Clerk was acting in concert to commit any act because he has not alleged facts that get him from Point A to Point B on this claim. But this claim is based on nothing more than speculation.

Furthermore, the bigger issue with this claim is that the Plaintiff's amended complaint is devoid of any allegations that establish that the Clerk reached any agreement with the media. "To prevail on a conspiracy claim, the plaintiff must show that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (quotation and citation omitted). "Put differently, [Pullins] must show an underlying constitutional violation and demonstrate that the defendants agreed to inflict the constitutional harm." *Id*. (quotations and citations omitted). Since Pullins has not alleged that the Clerk reached an agreement to deprive him of a constitutional right, he has not alleged sufficient facts to support his conspiracy theory.

Under binding federal law, "[Pullins] must also show a racial animus driving the conspiracy." *Alexander v. City of S. Bend*, 433 F.3d 550, 557 (7th Cir. 2006). But Plaintiff's amended complaint does not allege that a racial animus was driving any alleged conspiracy between the Clerk and any other party. Thus, his amended complaint does not allege sufficient facts to state a claim to relief that is plausible on its face. *See Iqbal*, 556 U.S. at 678.

Additionally, Plaintiff's amended complaint does not allege sufficient facts to state a claim under any subsections of 42 U.S.C. § 1985. "§ 1985(1) relates solely to federal officers and federal office holders." *Love v. Bolinger*, 927 F. Supp. 1131, 1140 (S.D. Ind. 1996) (citations omitted). The Municipal Defendants are not federal officers or federal office holders. Thus, they cannot be sued under that subsection. "To withstand a motion to dismiss claims under the second clause of § 1985(2), or under § 1985(3), plaintiffs must allege facts demonstrating that class-based discrimination was the reason for defendants' conduct." *Id*. (citations omitted). However, Plaintiff's amended complaint does not allege that Pullins was subjected to any acts because he is a member of any protected class. Since he cannot proceed under any subsection of § 1985, his § 1985 claim that the Clerk conspired to interfere with his civil rights should be dismissed.

Furthermore, Pullins is not entitled to any relief under 18 U.S.C. § 1519. § 1519 is a criminal statute. The Supreme Court has "been quite reluctant to infer a private right of action from a criminal prohibition alone[.]" *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190–91 (1994). "[T]o date, no circuit or Supreme Court opinion has held that § 1519 creates a private right of action." *Peavey v. Holder*, 657 F. Supp. 2d 180, 190 (D.D.C. 2009), aff'd, 2010 WL 3155823 (D.C. Cir. Aug. 9, 2010); *Bratset v. Davis Joint Unified Sch. Dist*., 2017 WL 6484308, at *4 (E.D. Cal. Dec. 19, 2017), report and recommendation adopted, 2018 WL 684845 (E.D. Cal. Feb. 2, 2018) ("18 U.S.C. § 1519 is a federal criminal

statute that does not provide a private right of action."); and *Amr v. Whittaker*, 793 Fed. Appx. 621, 622 (9th Cir. 2020) (affirming the dismissal of a pro se complaint that alleged a violation of 18 U.S.C. § 1519 because it "failed to allege facts sufficient to state a plausible claim."). Thus, Pullins's § 1519 claim is not a claim upon which relief may be granted. Since the federal claims asserted in Plaintiff's amended complaint are not claims upon which relief may be granted, the Court should dismiss all federal claims that he has brought against the Municipal Defendants.

     **C.**     **Pullins does not have standing to pursue any federal claim.**

     The Court should dismiss Plaintiff's amended complaint under Rule 12(b)(1) of the Federal Rules of Civil Procedure because he lacks standing to pursue the only timely federal claim asserted in that complaint. "Federal Rule of Civil Procedure 12(b)(1) allows a party to move to dismiss a claim for lack of subject matter jurisdiction." *Hallinan*, 570 F.3d at 820.

     "In evaluating a challenge to subject matter jurisdiction, the court must first determine whether a factual or facial challenge has been raised." *Silha v. ACT, Inc*., 807 F.3d 169, 173 (7th Cir. 2015). "A factual challenge contends that 'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient." *Id*. "[A] facial challenge argues that the plaintiff has not sufficiently 'alleged a basis of subject matter jurisdiction.'" *Id*. This brief asserts a facial challenge. "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id*.

     As the party invoking federal jurisdiction, Pullins bears the burden of establishing standing. *Hughes v. Chattem, Inc*., 818 F. Supp. 2d 1112, 1116 (S.D. Ind. 2011) (citing *Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003)). "Standing requires a showing of: (1) injury-in-fact, which is an 'invasion of a legally protected interest that is concrete and particularized, actual or imminent, and not conjectural or hypothetical'; (2) causal linkage between the

defendant's conduct and the injury; and (3) likelihood that a favorable decision will remedy the injury." *Id*. (citing *Tobin for Governor v. Ill. State Bd. of Elections*, 268 F.3d 517, 527 (7th Cir.2001); and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Each element of standing 'must be supported by more than unadorned speculation.'" *Id*. (quoting *United States v. Diekemper*, 604 F.3d 345, 350 (7th Cir.2010)).

The only timely claim that Pullins brought against the Municipal Defendants is his election fraud claim. "The Constitution is not an election fraud statute: protection is extended to the right of all qualified citizens to vote in state and federal elections and to the right to have votes counted without dilution as compared to the votes of others." *Bodine v. Elkhart Cty. Election Bd*., 788 F.2d 1270, 1271 (7th Cir. 1986) (citations omitted). Nevertheless, the Seventh Circuit recently noted that an inaccurate vote tally may be a concrete and particularized injury that would grant a candidate standing. *See Trump v. Wisconsin Elections Comm'n*, 2020 WL 7654295, at *2 (7th Cir. Dec. 24, 2020). Thus, the first two prongs of standing are satisfied.

However, Pullins must also establish that it is "likely," as opposed to merely "speculative," that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). Here, a favorable decision will not redress any injury-in-fact that he suffered that is fairly traceable to the Municipal Defendants' conduct. Indeed, Pullins has not alleged that he would have prevailed in the 2018 primary election if the Clerk had not falsified his vote totals. Congressman Andre Carson defeated him by 37,436 votes in 2018. (available at https://ballotpedia.org/Indiana%27s_7th_Congressional_District). This amounted to about 165 times as many votes as Pullins received in 2018. *Id*. Thus, Pullins cannot reasonably contend that he would have won the election but for the actions of the Clerk. His decision to not contest the election and prove that he would have won but for the Clerk's conduct is fatal to his

10

claims under Indiana law. *Pabey v. Pastrick*, 816 N.E.2d 1138, 1143 (Ind. 2004) ("the failure to comply with the requirements of the election contest statutes generally requires dismissal."). Thus, the Municipal Defendants respectfully contend that it should also be fatal to his federal claims because it prevents the Court from awarding Pullins relief that would redress his injuries.

Indeed, the biggest issue preventing Pullins from having standing is "the gap between what [he] ultimately desires ([monetary relief]) on one hand, and what a court can award him on the other." *Trump v. Wisconsin Elections Comm'n*, 2020 WL 7654295, at *3 (7th Cir. Dec. 24, 2020). First, the Voting Rights Act, 52 U.S.C. § 10101, does not create private right of action for monetary relief. *Olagues*, 770 F.2d at 805. Second, 18 U.S.C. § 1519 does not create a private right of action. *Peavey*, 657 F. Supp. 2d at 190; *Amr*, 793 Fed. Appx. at 622. Third, he has not alleged a claim that may proceed under 42 U.S.C. § 1985. *See Love*, 927 F. Supp. at 1140.

Also, binding precedents suggest that candidates are only entitled to non-monetary relief if they prove that inaccurate vote totals caused their rights to be violated. *See, e.g., Trump*, 2020 WL 7654295, at *3. Since the Court cannot grant Pullins relief that would redress an injury traceable to the Municipal Defendants, Pullins lacks standing to pursue his claims in this case.

**D.     Pullins's federal claims should be dismissed under the doctrine of laches.**

"Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary*, 501 U.S. 312, 320 (1991). "Laches arises when an unwarranted delay in bringing a suit or otherwise pressing a claim produces prejudice to the defendant." *Fulani v. Hogsett*, 917 F.2d 1028, 1031 (7th Cir. 1990). "In the context of elections, this means that any claim against a state electoral procedure must be expressed expeditiously." *Id.* "As time passes, the state's interest in proceeding with the election increases in importance as resources are committed and irrevocable decisions are made." *Id.*

"The candidate's and party's claims to be respectively a serious candidate and a serious party with a serious injury become less credible by their having slept on their rights." *Id.* (citing *Kay v. Austin*, 621 F.2d 809, 813 (6th Cir.1980) (laches applied where candidate waited two weeks after he knew he would not be listed on ballot to file suit and preliminary work had already been done for election); *McCarthy v. Briscoe*, 539 F.2d 1353, 1354–55 (5th Cir.1976) (application for emergency injunctive relief denied where entire election process would be disrupted by lawsuit filed on July 30 seeking ballot access to November presidential election)).

"[B]elated election litigation risks giving voters 'incentive to remain away from the polls.'" *Trump*, 2020 WL 7654295, at *3 (quoting *Purcell v. Gonzalez*, 549 U.S. 1, 5 (2006)); *see also Crookston v. Johnson*, 841 F.3d 396, 398 (6th Cir. 2016) ("Call it what you will—laches, the *Purcell* principle, or common sense—the idea is that courts will not disrupt imminent elections absent a powerful reason for doing so."). "On this reasoning, [the Seventh Circuit has] rejected as late claims brought too close in time *before* an election occurs." *Id.* (emphasis in original) (citing *Democratic Nat'l Comm. v. Bostelmann*, 977 F.3d 639, 642 (7th Cir. 2020); *Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1060–62 (7th Cir. 2016); *Navarro v. Neal*, 716 F.3d 425, 429 (7th Cir. 2013)).

"The same imperative of timing and the exercise of judicial review applies with much more force on the back end of elections." *Id.* "Before a court can contemplate entering a judgment that would void election results, it *must* consider whether the plaintiffs filed a timely pre-election request for relief." *Id.* (emphasis in original) (quotation and citation omitted).

"These very considerations underpin the doctrine of laches." *Id.* "At its core, laches is about timing." *Id.* "Laches cuts off the right to sue when the plaintiff has delayed 'too long' in suing. 'Too long' for this purpose means that the plaintiff delayed inexcusably and the defendant

was harmed by the delay." *Id.* (quoting T*eamsters & Emps. Welfare Tr. of Ill. v. Gorman Bros. Ready Mix*, 283 F.3d 877, 880 (7th Cir. 2002).

Here, Plaintiff's amended complaint clearly demonstrates that Pullins waited far too long to bring his claims against the Municipal Defendants. Indeed, he is complaining about conduct that allegedly took place over a period of 12 years. [Filing No. 14 at 2.] His amended complaint alleges that Clerks fraudulently reported his election results during this 12-year period. *Id*. The events that support his belief that the media conspired with Congressman Carson's campaign and the Clerk also would have occurred prior to the 2018 primary election. *Id*. at 3–4. Since Pullins could have sought the nonmonetary relief that would have been available if he prevailed on his federal claims prior to the primary election, his failure to do so before the election should bar his claims. *See Trump*, 2020 WL 7654295, at *3. Also, his failure to seek redress under Indiana's election contest statute deprived him of standing to pursue his claim well over two years ago. See, e.g., Pabey, 816 N.E.2d at 1143 ("failure to comply with the requirements of the election contest statutes generally requires dismissal.").

Even if there was a period following the primary election when the doctrine of laches would not have barred Pullins's federal election fraud claim, this period elapsed long before Pullins filed his complaint on May 5, 2020. Indeed, Congressman Carson—who defeated Pullins and prevailed in the general election—will have served his entire term in Congress before the pleadings close in this case. [*See* Filing No. 22.] Allowing Pullins to pursue a federal election fraud claim at this late date, would impose unquestionable harm on the Municipal Defendants and the voters who voted in the general elections in question. Thus, the Court should exercise its discretion and rule that Pullins's federal election fraud claim is barred under the doctrine of laches because he waited far too long to pursue his claim. *See Trump*, 2020 WL 7654295, at *4.

### E.       Pullins's state-law claims should be dismissed.

Here, the Municipal Defendants contend that Pullins's federal claims may be dismissed under (1) Rule 12(b)(1) because the Court lacks jurisdiction over his federal claim and (2) Rule 12(b)(6) because they are not claims upon which relief may be granted. "If the district court dismisses the federal claims on any basis other than for lack of jurisdiction, the court has discretion regarding whether to maintain supplemental jurisdiction over the state law claims." *Walker v. Ingersoll Cutting Tool Co*., 915 F.3d 1154, 1157 (7th Cir. 2019). Thus, the Municipal Defendants ask the Court to dismiss Pullins's state-law claims if he does not establish that the Court has jurisdiction over his federal claims—Pullins must prove the Court has jurisdiction.

However, if the Court dismisses Pullins's federal claims under Rule 12(b)(6), "the Court must determine whether to exercise its discretion to retain jurisdiction over the supplemental claims pursuant to 28 U.S.C. § 1367(a) or to dismiss them pursuant to 28 U.S.C. § 1367(c)." *Oyebade v. Boston Sci. Corp*., 955 F. Supp. 2d 920, 941 (S.D. Ind. 2013). "Once jurisdiction is established based on a properly brought federal claim, § 1367 contains no requirement that such jurisdiction be relinquished. The exercise of supplemental jurisdiction is purely discretionary." *Bailey v. City of Chicago*, 779 F.3d 689, 696 (7th Cir. 2015). When deciding whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173, 118 S.Ct. 523, 139 L.Ed.2d 525 (1997) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)). "It is well-established that the usual practice is to dismiss the state supplemental claims without prejudice." *Oyebade*., 955 F. Supp. 2d at 942 (citation omitted).

Again, the only timely claim that Pullins brought in this case is his election fraud claim. The Seventh Circuit recently ruled that an election fraud claim challenging the outcome of an election "presents a federal question, despite its anchoring in alleged violations of state law." *Trump*, 2020 WL 7654295, at *3. However, another recent precedent from the Seventh Circuit characterized an election fraud claim challenging post-election conduct of election officials as "a state law claim for a violation of state law, not a federal claim for a violation of constitutional rights." *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1062 (7th Cir. 2020). "[A] deliberate violation of state election laws by state election officials does not transgress against the Constitution." *Kasper v. Bd. of Election Comm'rs of the City of Chicago*, 814 F.2d 332, 342 (7th Cir. 1987) (citing *Snowden v. Hughes*, 321 U.S. 1, 11, 64 S.Ct. 397, 88 L.Ed. 497 (1944)); *Hennings v. Grafton*, 523 F.2d 861, 864 (7th Cir. 1975) ("It is not every election irregularity, however, which will give rise to a constitutional claim and an action under section 1983. Mere violation of a state statute by an election official, for example, will not.").

If the Court dismisses Pullins's federal claims under Rule 12(b)(6), the Municipal Defendants request that the Court also dismiss Plaintiff's state-law claims under Rule 12(b)(6). State-law claims that do not relate to the election fraud claim asserted in his initial complaint are untimely under Indiana Code § 34–11–2–4 because Pullins brought them against the Municipal Defendants over two years after they accrued. Furthermore, any election fraud claim that Pullins could have brought under state-law is also untimely. *See Pabey*, 816 N.E.2d at 1143 (noting that "the failure to comply with the requirements of the election contest statutes[, Indiana Code § 3–12–8–1, *et seq.*] generally requires dismissal."). Under Indiana law, "[a] candidate who desires to contest an election or a nomination . . . must file a verified petition with the circuit court clerk of the county that contains the greatest percentage of the population of the election district no later

than noon fourteen (14) days after election day". Ind. Code § 3-12-8-5. Here, Pullins's initial complaint was filed nearly two years after this deadline for contesting the alleged election fraud referenced in his initial complaint expired. Thus, this claim—if it is characterized as a state-law claim—is untimely under the Indiana's election laws and precedents applying those laws.

Furthermore, Pullins's state-law claims are not claims upon which relief may be granted because the Municipal Defendants are immune from suit under the Indiana Tort Claims Act ("ITCA"). "The law enforcement immunity of the ITCA provides, 'A governmental entity . . . is not liable if a loss results from . . . [t]he adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations) . . . .'" *Cento v. Marion Cty. Sheriff's Office*, 2018 WL 3872221, at *4 (S.D. Ind. Aug. 15, 2018) (quoting Ind. Code § 34-13-3-3(8)). "Law enforcement immunity encompasses activities related to the enforcement of a statute as well as rules and regulations, thereby immunizing 'a variety of administrative and executive functions.'" *Id*. (quoting *King v. Northeast Sec., Inc*., 790 N.E.2d 474, 482 (Ind. 2003)). "Immunity attaches when the governmental activity involves the adoption or enforcement of laws, rules, or regulations (or the failure to do so) that falls within the scope of the entity's purpose or operational power and are, thus, within the assignment of the governmental unit." *Id*. (quotations and citations omitted). "[T]he scope of the law enforcement immunity reaches activities within the operational purpose and power of the specific [municipal] entity based on the adoption and enforcement of laws, rules, or regulations." *Id.* at *5.

Furthermore, law enforcement officers are entitled to law enforcement immunity under the ITCA if they damage a plaintiff when they respond to or fail to respond to reports concerning criminal activity. *See Seay v. City of Indianapolis*, 2020 WL 6710922, at *9 (S.D. Ind. Nov. 16, 2020). In *Seay*, officers were dispatched to respond to a report that a suspect had been involved

in a domestic violence incident. *Id*. at 1–3. When the officers were investigating the report, the suspect experienced medical problems and passed away when he was treated by paramedics. *Id*. There, the officers' "actions and interactions with [the suspect] involved the enforcement of the law." *Id*. at 9. "Therefore, the ITCA applie[d], and law enforcement immunity under Indiana Code § 34-13-3-3(8) protect[ed] the City of Indianapolis and its police officers against Plaintiff's state law claim[s] . . . ." *Id*. The same result would be required if they failed to enforce the law.

Here, the Court should dismiss Pullins's claims that arise from any alleged failure to investigate his report to IMPD because the Municipal Defendants are immune under the ITCA when they are enforcing or failing to enforce the law. Again, the officers in *Seay* were immune because their actions were taken to enforce the law. However, the Municipal Defendants are also immune from suit when their failure to enforce the law causes injuries. Ind. Code § 34-13-3-3(8). Thus, they may not be sued if their failure to enforce the law caused Pullins to sustain damages because they are immune from suit in those circumstances under the ITCA.

The Municipal Defendants are also not liable for any threat that an unidentified City employee might have made to Pullins. Plaintiff's complaint does not allege sufficient facts to show that he has a cognizable claim against the Municipal Defendants based upon this threat because an employer may only be held liable for damages caused by its employees if they caused those damages when acting in the scope of their employment. *See Stropes by Taylor v. Heritage House Childrens Ctr. of Shelbyville, Inc*., 547 N.E.2d 244, 247 (Ind. 1989). The City does not employ anyone to threaten candidates. And Plaintiff's alleged complaint does not allege that it does. Since any claim Pullins may have been entitled to pursue concerning this threat is not a claim against the Municipal Defendants upon which relief may be granted, the Court should dismiss this claim under Rule 12(b)(6) if Pullins establishes that the Court has jurisdiction.

17

If the Court finds that the Municipal Defendants are not immune from Pullins's state-law claims, the Municipal Defendants ask the Court to rule that they are barred by the statute of limitations applicable to those claims. However, even if the Court rules that those claims are not barred under the statute of limitations, it should dismiss those claims because the complaint does not "contain sufficient factual matter, accepted as true, to 'state a [state-law] claim to relief that is plausible on its face'" *Ashcroft*, 556 U.S. at 678. Indeed, Pullins has not pled sufficient facts to show that he has a state-law conspiracy claim. Also, his amended complaint does not allege any facts that show that the Municipal Defendants are liable for libel. And it does not allege facts that show that the Municipal Defendants are liable for political persecution or intimidation. Plaintiff's amended complaint also does not allege facts that support an emotional distress claim.

"The Federal Rules of Civil Procedure require that a complaint provide the defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Couch v. Wilco Life Ins. Co.*, 363 F. Supp. 3d 886, 889 (S.D. Ind. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007)). Plaintiff's amended complaint is deficient because it does not provide fair notice of the grounds upon which his conspiracy, libel, political persecution, intimidation, and emotional distress claims rest. Thus, those claims should be dismissed because they are legally deficient—if they are not dismissed for being untimely.

If Pullins establishes that he has jurisdiction and the Court finds that any of his state-law claims are claims upon which relief may be granted, the Municipal Defendants respectfully request that that Court relinquish jurisdiction over his state-law claims. Again, the Municipal Defendants respectfully contend that Pullins's federal claims should be dismissed for numerous reasons. If the Court finds that it has jurisdiction and dismisses his federal claims under Rule 12(b)(6), it would serve judicial economy if it also dismisses any state-law claim that may be

dismissed with prejudice under Rule 12(b)(6). Indeed, it would not serve judicial economy if Pullins were to reassert those claims in another venue and another judge were required to rule on those claims. Also, it would not serve judicial economy if the Court retained jurisdiction over any state-law claim that is not dismissed with prejudice because those claims would burden the Court and there is no diversity jurisdiction in this case. Thus, if the Court rules that any of the state-law claims asserted in Plaintiff's amended complaint may proceed, the Municipal Defendants respectfully request that it relinquish jurisdiction over those state-law claims.

### F.    Pullins's amended complaint may be dismissed because it is frivolous.

When the Court dismisses a complaint for a lack of jurisdiction, the dismissal is generally without prejudice. *See Beauchamp v. Sullivan*, 21 F.3d 789, 790–91 (7th Cir. 1994). This is because the court typically cannot reach the merits of a case if the plaintiff lacks standing. *Id*. "But there is an exception for the frivolous case." *Id*. "A frivolous case does not engage the jurisdiction of the court." *Id*. "So frivolousness is an alternative jurisdictional ground for dismissal to lack of standing." *Id*. The Seventh Circuit has ruled that it is not improper to dismiss a complaint with prejudice if it is frivolous. *Id*. This Court has also suggested that a dismissal with prejudice is appropriate if there is no way that a party's grievance could ever mature into justiciable claims. *St. Angelo v. Barr*, 2020 WL 881697, at *7 (S.D. Ind. Feb. 24, 2020) (citing *Harris v. Quinn*, 656 F.3d 692, 701 (7th Cir. 2011)).

The Court may take judicial notice of publicly known facts concerning the outcome of the primary elections at issue in this case. Pullins finished behind four Democrats seeking their party's nomination to run for the U.S. House of Representative in the Seventh District during the 2018 general election— after receiving only 0.5% of the votes cast in the 2018 primary election. (available at https://www.nytimes.com/interactive/2018/05/08/us/elections/results-indiana-

primary-elections.html) (last visited on December 28, 2020). Congressman Carson defeated

Pullins and three others when he received 87.9% of the votes cast in that primary election. *Id.*

      If Pullins were afforded the opportunity to amend his complaint again, the best that he

could do is ask for equitable relief on his federal election law claim. But the doctrine of laches

should bar his attempt to obtain equitable relief over 31 months after the 2018 primary election

because the candidate nominated in that election will have already completed his term in office

before the Court will be able to grant Pullins relief. Also, this doctrine should bar his election

fraud claim because the equitable relief that would redress his injuries at this point would impose

significant harm on the Municipal Defendants and voters from the Seventh District. *See Trump*,

2020 WL 7654295, at *4. Since Pullins's grievances against the Municipal Defendants will not

ever mature into justiciable claims that would be cognizable under state or federal law, Plaintiff's

amended complaint should be dismissed with prejudice. *See St. Angelo*, 2020 WL 881697, at *7.

## II.   Conclusion

      For the foregoing reasons, the Municipal Defendants respectfully requests that this Court

dismiss the claims asserted against them in Plaintiff's amended complaint with prejudice.

               Respectfully submitted,

          /s/ Andrew J. Upchurch
         Andrew J. Upchurch (30174-49)
         Deputy Chief Litigation Counsel
         Office of Corporation Counsel
         200 East Washington Street, Room 1601
         Indianapolis, Indiana   46204
         Telephone: (317) 327-4055
         Fax:  (317) 327-3968
         E-Mail: andrew.upchurch@indy.gov

**Certificate of Service**

I certify that this document was filed electronically on December 28, 2020. Service will be made on all ECF-registered counsel by operation of the Court's electronic filing system.

I also certify that a copy of the foregoing shall be served on the following party via U.S. mail:

Pierre Q. Pullins
6120 Westlake Drive N.
Apt. B
Indianapolis, IN 46224

/s/ Andrew J. Upchurch
Andrew J. Upchurch (30174-49)
Deputy Chief Litigation Counsel

OFFICE OF CORPORATION COUNSEL
200 East Washington Street, Room 1601
Indianapolis, Indiana 46204
Telephone: (317) 327-4055
Fax: (317) 327-3968
andrew.upchurch@indy.gov