UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| PIERRE Q. PULLINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01311-JRS-MJD |
| | ) | |
| MYLA ELDRIDGE in her capacity of | ) | |
| Secretary, | ) | |
| MARION COUNTY ELECTION BOARD, | ) | |
| INDIANA ELECTION COMMISSION, | ) | |
| MARION COUNTY CLERK, | ) | |
| CITY OF INDIANAPOLIS, | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON PLAINTIFF'S MOTION TO ENJOIN DEFENDANTS

Pierre Q. Pullins ("Mr. Pullins"), *pro se*, alleges that he is the victim of a decades-long political conspiracy. Mr. Pullins alleges that the clerks of Marion County, Indiana, falsified his vote totals when he was a candidate in the Democratic primaries for Indiana's Seventh Congressional District. (Am. Compl., ECF No. 14.) While Mr. Pullins named several government entities as Defendants in his complaint, (*id.*), he currently moves for a preliminary injunction ("Motion") against only three of them: (1) the current clerk of Marion County, Myla Eldridge; (2) the City of Indianapolis; and (3) Marion County, Indiana (collectively "Present Defendants"). (Mot. to Enjoin, ECF No. 12.) For the following reasons, the Court **denies** Mr. Pullins's Motion.

1

## I. Background

Indiana has nine congressional districts.  The Seventh Congressional District is located entirely within Marion County and represents a large part of Indianapolis.  Under Indiana law, the district's primary and general elections are overseen by the Marion County Election Board ("Election Board").   *See* Ind. Code § 3-6-5-14(a).  The Election Board consists of three people: the Marion County Clerk and two appointees.  Ind. Code § 3-6-5-2.  The Election Board has a website, where it lists the results of past elections and provides voter information.  Marion County Election Board, https://www.indy.gov/agency/marion-county-election-board (last visited August 30, 2021).  The Court assumes that for all relevant years here, the Election Board has overseen the Democratic primaries for the Seventh Congressional District.

The following background is drawn from the Amended Complaint, (Am. Compl., ECF No. 14), which, though filed after the instant motion, is the operative complaint.  Mr. Pullins has campaigned in the Democratic primary for the Seventh Congressional District every election year since 2006.  He alleges that during each of his runs, the Marion County Clerks falsified the vote totals for his candidacy.  (*Id.* 2-3.)  Mr. Pullins claims that in 2010, the Marion County Clerk's Office removed the 2006 election results from the Election Board's website.  (*Id.* at 2.)  According to Mr. Pullins, those results were kept off the website from 2010 until late September 2020, when those pages started to be "corrected or 'fixed.'"  (Am. Compl. 2, ECF No. 14.)  Mr. Pullins "believes" that Office's handling of the webpage "is also a crime."  (*Id.*)

Shortly thereafter, Mr. Pullins filed this Motion.  (Mot. to Enjoin, ECF No. 12.) He seeks two injunctions: a mandatory injunction ordering Present Defendants to restore the Election Board's website to its "position at the beginning of May 1, 2020"— thereby removing the now-visible 2006 election results—and a prohibitory injunction barring Present Defendants from changing any webpages on the Election Board's website which "concern[] the reporting of the 2006 election result totals." (*Id.*)  His Motion is narrow—it only concerns the webpages related to the 2006 election results.

One final note: none of the parties were required to file briefs on this Motion, *see* S.D. Ind. L.R. 65-2(a), and no one has.  Thus, with the time for filing briefs having passed, the Court takes the Motion at face value and considers it along with Mr. Pullins's other pleadings, as he is a *pro se* litigant.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*pro se* filings must be evaluated liberally).

## II. Standard of Review

Preliminary injunctions are extraordinary remedies.  *Winter v. Nat. Ress. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  A request for a preliminary injunction has two steps.  First, "[a] party seeking a preliminary injunction must satisfy all three requirements in the threshold phase by showing that (1) it will suffer irreparable harm in the period before the resolution of its claim; (2) traditional legal remedies are inadequate; and (3) there is some likelihood of success on the merits of the claim." *HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cnty of Marion, Ind.*, 889 F.3d 432, 437 (7th Cir. 2018) (quotations omitted) (citing *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008)).

3

The movant bears the burden of showing that a preliminary injunction is warranted. *Harlan v. Scholz*, 866 F.3d 754, 758 (7th Cir. 2017) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)).  Satisfying the "likelihood of success" standard requires a "strong showing that normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Tranchita v. Callahan*, 511 F. Supp. 3d 850, 864 (N.D. Ill. 2021) (quotations removed) (quoting *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762–63 (7th Cir. 2020)).

If a plaintiff makes such a showing, "the court must then weigh the harm the plaintiff will suffer without an injunction against the harm the defendant will suffer with one." *Harlan*, 866 F.3d at 758 (citing *Ty, Inc. v. Jones Grp., Inc.*, 237 F.3d 891, 895 (7th Cir. 2001)).  The court must also consider whether the public interest would be served by the injunction.  *Ty*, 237 F.3d at 895.  The court "weighs all of these factors, sitting as would a chancellor in equity, when it decides whether to grant the injunction." *Id.* (quotations omitted) (quoting *Abbot Lab'ys v. Mead Johnson & Co.*, 971 F.2d 6, 12 (7th Cir. 1992)).  This includes looking to the traditional maxims used in the courts of equity.  *See* 11A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2942 (3d ed. 2021) (illustrating how the history of equity plays a role in evaluating injunctions).

### III. Discussion

Here, the Motion does not demonstrate any of the elements for a preliminary injunction.  *Common Cause Ind. v. Lawson*, 978 F.3d 1036, 1039 (7th Cir. 2020) (setting out the preliminary injunction standard).  First, the Court cannot divine how

4

Mr. Pullins will irreparably be harmed before his claims are resolved. Indeed, there is no pending or impending election. Second, his prayer for monetary relief undermines any finding that traditional legal remedies are inadequate. Third, the Court does not see a likelihood of success on the merits here. Mr. Pullins has cited no authority, and the Court is not aware of any, that would not allow changes to the website.

Looking beyond the Motion, to the Amended Complaint, it is equally apparent that Mr. Pullins faces challenges to succeeding on the merits of the underlying claims. Mr. Pullins has not illustrated how the facts alleged would meet the key elements of any of the pleaded causes of action. His Amended Complaint broadly states that the Defendants have violated three different federal laws: the Voting Rights Act; 42 U.S.C. § 1985; and 18 U.S.C. § 1519. (Am. Compl. 2, ECF No. 14.) He also pleads that the Defendants have engaged in election fraud, conspiracy, and "political persecution." (*Id.* at 2, 4-5.) But nowhere does Mr. Pullins show—and the Court is unable to see—how taking down the 2006 election results webpages, or how restoring them in 2020, violates these laws. While Mr. Pullins is permitted to have his Motion stand on its own, his Motion to change the website today does not make any legal arguments. In sum, either looking at the requested relief in the Motion or in the Amended Complaint, Mr. Pullins has not met his burden.

Even if the Court could get to the balancing analysis, Mr. Pullins's Motion does not warrant relief because it is unclear. The title of his Motion seeks to prevent Present Defendants from "making changes" to the website, but the body of his Motion

5

asks for the website to be "restore[d]." (Mot. to Enjoin, ECF No. 12.) So, while the Motion seeks to enjoin any changes to the website concerning the 2006 election results, it is unclear whether Mr. Pullins wishes the 2006 election results to be made available on the website, or to be removed from the website at this time. Construing the Amended Complaint liberally, for example, the Court discerns his prayer for relief as stemming from the allegedly fraudulent "removal of the 2006 election result totals from the Marion County Election Board's website . . . and . . . the disabling of the site so that none of the vote totals can be seen." (Am. Compl. 6, ECF No. 14.) This would indicate that he has been injured by the removal of those results from view. However, his Motion asks to have the website returned to the very state of which he complains. Not only does this request seem contradictory to his claims in the Amended Complaint, but it is, as best the Court can determine, only tangentially related to the claims therein relating to the 2006 election results, namely: (1) his claim that removing the 2006 election results was unlawful, and (2) his claim that the 2006 election results were themselves fraudulent.

Any request for a preliminary injunction must necessarily be tied to the plaintiff's claims. *See* De Beers Consol. Mines v. United States, 325 U.S. 212, 220 (1945) ("A preliminary injunction is always appropriate to grant intermediate relief of the same character as that which may be granted finally." ); *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint."). Thus, if the request in the Motion is unrelated

to the claims in the Amended Complaint, that alone would be grounds to deny the Motion. But, given the lack of clarity and the need to construe *pro se* filings broadly, the Court has conducted the above analysis under the preliminary injunction framework.

### III. Conclusion

For the foregoing reasons, the Court **DENIES** Mr. Pullins's Motion (ECF No. 12) without prejudice.

**SO ORDERED.**

Date:   9/9/2021

JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

PIERRE Q. PULLINS
6120 Westlake Dr. N
Apt. B
Indianapolis, IN 46224

Courtney Lyn Abshire
INDIANA ATTORNEY GENERAL
courtney.abshire@atg.in.gov

Parvinder Kaur Nijjar
INDIANA ATTORNEY GENERAL
parvinder.nijjar@atg.in.gov

Andrew J. Upchurch
OFFICE OF CORPORATION COUNSEL
andrew.upchurch@indy.gov